[Crim. No. 379.  First Appellate District.—June 1, 1912.]

## THE PEOPLE, Respondent, v. E. C. MILES, Appellant.

CRIMINAL LAW—GRAND LARCENY—SUPPORT OF VERDICT.—It is held upon a review of the evidence that it is sufficient to show a grand larceny, committed by means of fraudulent trick and device, notwithstanding that the fraudulent methods employed were such as might have supported a charge for obtaining money under false pretenses.

ID.—PLEADING DISTINCT OFFENSES UNDER DIFFERENT COUNTS RELATING TO SAME TRANSACTION PERMISSIBLE—EFFECT OF FOLLOWING RULE. Under section 954 of the Penal Code, as amended in 1905, it is permissible to charge different offenses in different counts of the same indictment or information, where such different offenses all relate to the same act, transaction or event. By following this rule so prescribed, any excuse for an appeal might be avoided where any doubt may exist as to the nature of the offense, such as whether the evidence will disclose a case of larceny, false pretenses, or embezzlement.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

William Maxwell, and N. C. Cöghlan, for Appellant.

U. S. Webb, Attorney General, for Respondent.

HALL, J.—Appellant was jointly charged with Mr. and Mrs. Arnold and one Emma Smith for the larceny of $1,000 of the property of Olive Griesse and Henry Griesse. Appellant was tried separately and by the jury found guilty as charged, and from the judgment rendered upon such conviction appealed to this court.

In the methods resorted to by appellant and his codefendants to obtain the money from the prosecuting witnesses this case bears a close resemblance to the case of *People* v. *Arnold,* 17 Cal. App. 68, [118 Pac. 729], in which all of the same parties were indicted for stealing $150 from one Francis Shaw, and in which case the conviction of Tessie Arnold was by this court sustained.

It is urged by the appellant that the verdict is not sustained by the evidence.

The evidence shows that at all the times referred to by the witnesses Tessie Arnold was residing at 1237 O'Farrell street, in the city and county of San Francisco, and at her apartments there conducted from time to time what she was pleased to call "seances," at which, as she represented to her patrons, voices from the spirit world audibly spoke to her and to those participating in the seances.

The prosecuting witnesses first visited Mrs. Arnold's apartments in the latter part of December, 1909, or in the early part of January, 1910, and became interested in the "seances." They kept up their visits at frequent intervals for about four months. They were early induced by Mrs. Arnold to have a "seance." At the invitation of Mrs. Arnold they entered a small apartment or cabinet, in the center of which was a small table, upon which was placed a music-box and a trumpet. The room was hung with curtains, apparently against the walls, and was illuminated by artificial light. During the "seances" this was turned down so as to give but a very dim light, and the music-box was set running so as to give forth strains of music. Mrs. Arnold and the prosecuting witnesses being seated at the table, voices were heard, apparently coming from the trumpet, and which Mrs. Arnold represented to be from the spirit world. One of these called himself Dr. Winthrop, and claimed to be the guide and "control" of Mrs. Arnold, while the other called himself Abdewater, and claimed to be the guide and "control" of Mrs. Griesse. We have no doubt but that the jury from the subsequent developments correctly believed that these voices came from the throats of Mr. Arnold and appellant Miles, and that they were confederates of Mrs. Arnold in a scheme to mulct Mr. and Mrs. Griesse of their little savings.

The confederates, as we shall hereafter term them, soon learned that Mr. and Mrs. Griesse were the owners of a lodging-house. Thereafter at each "seance" the voices advised and urged Mr. and Mrs. Griesse to sell their lodging-house, to the end that the money could be invested under the directions of "Dr. Winthrop" and "Abdewater." By means of urging, cajoling and bullying repeated at frequent "seances," the confederates finally induced the Griesses to dispose of

their lodging-house, for which they received the sum of $1,400, and which they promptly, on the eighteenth day of April, 1910, deposited in the Anglo, London & Paris National Bank in such a manner that it could be withdrawn upon the order of either Mr. or Mrs. Griesse. Shortly afterward Mr. and Mrs. Griesse, at the invitation, over the telephone, of Mrs. Arnold, visited her, and were given a "seance," at which the voices urged and advised the Griesses to invest their money in a wonderful invention originated by an "honest man" whom they had been "developing" as an inventor. At the conclusion of the "seance" the Griesses were conducted by Mrs. Arnold to another room, where they were introduced to appellant as the inventor and to Mr. Arnold. The merits of his "fountain tooth brush" and the wonderful business prospects of the "American Fountain Tooth Brush Company," to be organized to market and exploit this invention, not yet completed nor patented, were explained to Mr. and Mrs. Griesse by appellant, and the "confederates" earnestly and persistently urged the Griesses to invest in the stock of the company, but without immediate success. The Griesses went home without coming to a decision.

On April 21, 1910, Mrs. Griesse visited Mrs. Arnold and was again treated to a "seance," at which she was urged and advised by the voices of "Dr. Winthrop" and "Abdewater" speaking through the trumpet to invest in the stock of the company. At the "seances" some sort of incense was burned, but at this one, more than usual, and she was urged by Mrs. Arnold to inhale of it, so as to more fully come under the "control." This she did to such an extent as to become dizzy. At the conclusion of the "seance" she was conducted to another room, where she again met Mr. Arnold and appellant, and after more talk and persistent urging in which she was told among other things that she could at any time get back $250 of her money and in a short time all of it, she signed and delivered to appellant a check on the bank for $1,000, payable to him, and which he promptly cashed. Appellant upon the receipt of the check gave her an instrument, signed by him, as follows:

"San Francisco, California, 6/21/1910.

"Received of Olive M. Griesse, on account of purchase price of ten thousand shares of the capital stock of the American

Fountain Tooth Brush Company (now being organized), owner of patent rights, for U. S. Patent application No. 546289, now pending. Stock to be issued and delivered as soon as printed and to be fully paid and nonassessable. -

"A. C. MILES, Agent."

This transaction occurred and the check was dated April 21, 1910.

It is urged that the evidence does not support the verdict in that, as it is claimed, no criminal connection of appellant is shown with the scheme to fleece Mr. and Mrs. Griesse, and because, as it is claimed, the evidence shows that the crime committed was not that of larceny, because, as it is claimed, the evidence shows that Mrs. Griesse intended to part with the title to her money when she gave the check.

As to the first contention there can be no doubt, from the evidence as we have detailed it, as well as from other matters in evidence not adverted to, that appellant was a fellow-conspirator and an active participant in the entire scheme.

The other point, to wit, that the evidence shows that Mrs. Griesse intended to and did part with title to the money when she made the transfer of possession, and that therefore the case is one of obtaining money by false and fraudulent pretenses, and not a case of larceny, is more plausible.

The court very correctly and clearly explained to the jury what constituted larceny by trick and device, and the difference between such a larceny and the crime of obtaining money by false and fraudulent pretenses, in accordance with the rule as laid down in *People* v. *Delbos,* 146 Cal. 734, [81 Pac. 131], and the cases there cited. It must be conceded, we think, that the jury would have been justified in finding that Mrs. Griesse did intend to, and did in fact, part with title to her money in the transaction with appellant. It may well be that such would have been the more logical conclusion to draw from the facts disclosed by the evidence.

But from this it does not follow that a contrary conclusion may not be supported by the evidence. Mrs. Griesse had been told that she could at any time have the return of $250 of her money and could shortly get it all back if she wished. The transaction occurred and the check was dated April 21, 1910. At this time the corporation had not been formed, nor indeed had any steps been taken to form the corporation. No

stock was yet issued or printed. The receipt was dated by appellant as of June 21, 1910 (6/21/1910), two months later than the date of the check. From this significant fact in connection with the other circumstances, the jury may well have found that it was intended and understood that until such date arrived, June 21, 1910, and the stock could be delivered and the transaction finally closed, the title to the money should remain with Mrs. Griesse, and the possession only be in appellant, for the purpose of paying for the stock when it could be issued by the company to Mrs. Griesse.

This view of the transaction finds substantial support in the evidence, and for that reason we cannot say that the verdict of guilty of grand larceny is not supported by the evidence.

The defendant also complains of the ruling of the court in sustaining an objection to appellant's offer to prove that the stock of the company was of some value. Without determining whether or not such evidence was at all pertinent or material in view of the peculiar facts of the case, we do not think the court in its ruling committed any error of which appellant can be heard to complain. Before this offer of testimony occurred, appellant had offered in evidence certain letters from various persons which, though not set forth in the record, seem to have been addressed to appellant, and to have contained statements bearing upon the value of the invention and the like. Upon objection these letters were ruled out, and appellant very properly makes no complaint as to such rulings. When he made his offer, of the ruling out of which he does complain, he did not put his witnesses upon the stand nor ask them any question. They were not shown to have had any knowledge of the company or of the value of the so-called invention. Appellant made a somewhat vague and general offer of testimony along certain general lines, and concluded his offer by the statement that "Your honor has practically ruled on that." By this statement counsel manifestly referred to the ruling of the court in rejecting the letters that had previously been offered, and we think in so doing really invited the ruling of the court that was thereupon made as to his present offer. The matter was certainly so presented to the court as to convey the idea that the same point was involved as had been ruled on. In this way the action of counsel was well calculated to mislead the court (unintentionally

of course) as to the purpose of the offer. The previous ruling was clearly correct; and we think, under the circumstances above detailed as attending the last offer, appellant should not be heard to complain of the ruling which he in effect invited.

Appellant also complains of the refusal of the court to give some instructions requested by appellant, but an examination of the record satisfies us that so far as such instructions correctly stated the law they were substantially given in other instructions. The instructions given were correct, and fully charged the jury on the matters of law involved in the case.

In concluding this opinion we deem the occasion opportune to call attention to the provisions of section 954 of the Penal Code, as amended in 1905, [Stats. 1905, p. 772]. This section is clearly intended to permit the charging of different offenses in different counts of the same indictment or information, where different offenses all relate to the same *act, transaction or event*. The section as it is now written has been the law of this state since 1905, and yet no case has yet been before this court where the prosecuting officer has availed himself of its provisions. It is certain that by following the rule prescribed in this section any excuse for an appeal could be frequently avoided where any doubt may exist as to whether the evidence will disclose a case of larceny, false pretenses or embezzlement. In charging under this section it is of course necessary that care be taken to make it clearly appear that the offense set forth relates to but one act, transaction or event (*People* v. *Jailles,* 146 Cal. 303, [79 Pac. 965]); but if this be done, no harm can result from charging under different counts so as to meet every plausible view of the facts.

The judgment is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 1, 1912, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1912.